In the Matter of the Gaslight Club, Inc., Respondent, *v.* State Liquor Authority, Appellant.

First Department, May 7, 1963.

*John J. Hyland* of counsel (*Hyman Amsel,* attorney), for appellant.

*Caesar L. Pitassy* of counsel (*Albert N. Proujansky* and *Leo P. Larkin, Jr.,* with him on the brief; *Royall, Koegel & Rogers,* attorneys), for respondent.

*Per Curiam.* The State Liquor Authority, in this article 78 proceeding, appeals from an order annulling its determination refusing renewal of a club liquor license to petitioner-respondent Gaslight Club, Inc.

It is concluded that the Authority's determination was not arbitrary and should be reinstated.

The Authority denied renewal of petitioner's club liquor license on the ground that petitioner was not conducting a bona fide club as defined in the Alcoholic Beverage Control Law (§ 3, subd. 9). Petitioner previously had a club liquor license, the renewal of which was denied in 1959, the Authority concluding, then as now, that petitioner was not conducting a bona fide club. The Authority's objection related to the interrelationship of petitioner with one Burton Browne and with other Gaslight Clubs in other States. Mr. Browne is a principal in these other clubs, and in other corporations serving the Gaslight Clubs, all of which the Authority evidently regards as ineligible entities. After denial of the renewal of petitioner's club license in 1959, and prior to the time the club license that is now in question was granted, the premises were in operation under restaurant liquor licenses issued to Browne personally. At one point,

Browne's personal restaurant liquor license was cancelled because the premises were not open to the general public, and because Browne sold alcoholic beverages on credit not as an incident to the sale of food to be consumed on the premises (see Alcoholic Beverage Control Law, § 99-c; § 100, subd. 5). In the meantime, and at the Authority's suggestion, petitioner reorganized its corporate structure and applied anew for a club liquor license, which was granted. In connection with that application, petitioner made several representations which, if met, would have tended to insure the *bona fides* of its club operation and its independence of the Burton Browne business enterprises. The failure to meet those representations, at least in substantial part, resulted in the most recent denial of renewal of petitioner's club license.

The granting of a club liquor license carries with it the right to limit service only to members and guests (Alcoholic Beverage Control Law, § 106, subd. 8) and the right to extend credit for alcoholic beverages sold to members and guests, not merely as an incident to the sale of food (Alcoholic Beverage Control Law, § 100, subd. 5; § 99-c). The Legislature has limited club licenses to organizations incorporated under the Membership Corporations Law or the Benevolent Orders Law, providing that such organizations do not traffic in alcoholic beverages for profit and otherwise operate solely for recreational, social, or similar purposes, and not for pecuniary gain (Alcoholic Beverage Control Law, § 3, subd. 9).

To preclude evasion of the strict requirements for a club liquor license, it is necessary to insure not only that licensees meet these requirements, but that they not be controlled by, or operated for the benefit of, entities not meeting these requirements. That petitioner satisfies the Membership Corporations Law as to its status, or in form meets the requirements of the Alcoholic Beverage Control Law, is not conclusive. For the purpose of the latter statute the administrative agency must still be satisfied that the form reflects the reality (cf. *Matter of Castle Hill Beach Club* v. *Arbury*, 2 N Y 2d 596, especially 607–608). So viewed, it is reasonable for the Authority to exact or receive assurances from the licensee of independence from ineligible entities, and to refuse to renew a license when these are not met, or even where, perhaps, such assurances are met in such a manner as to cast further doubt on the *bona fides* of the club operation.

As stated, petitioner's difficulty is its continuing interrelationship with Burton Browne, the other Gaslight Clubs, and other corporations of which Browne is a principal. It is because of

such difficulty that the Authority exacted or received from petitioner certain representations in connection with its application for the instant club liquor license. The representations were designed to insure that Browne was excluded from petitioner's management or employ, that the other Gaslight Clubs would be separate from and independent of petitioner, that other entities in which Browne had an interest would not collect petitioner's accounts receivable or service its membership applications, and that the $260,000 given to Browne and his other entities when petitioner lost its first club license would be repaid by a specified method. Petitioner met some of the representations, and failed to meet others, but the manner in which it met some of the representations is as interesting for this purpose as its failure to meet the others.

After making the representations, and after having received the club license, petitioner retained Browne at a salary to be $25,000 per year (although he has not been paid pending the Authority's approval) and it arranged to have its accounts receivable collected by a different Browne corporation than the one which had been doing it previously. Moreover, of the $260,000 originally owed petitioner better than half remains unpaid, petitioner alleging, however, that a method for payment has now been fixed, although not precisely as earlier specified.

The relationship of petitioner with Browne and the other entities was such that the Authority was entitled to doubt there was sufficient likelihood that petitioner could become truly independent. The events thereafter, which took place under two separate club liquor licenses, were confirmatory.

Petitioner argues that it has exhibited a willingness to mend its ways still further: for that reason it has contracted with a (truly) independent corporation to collect its accounts receivable, has not paid Browne his salary, and has made a new arrangement to have the remainder of the debt repaid to it; so that, it continues, even if it should be determined that the Authority has not acted arbitrarily in the past, petitioner is now entitled to a club license. The success of this argument requires that petitioner's instant situation be viewed in an historical vacuum. While an application for renewal is to be viewed in the same manner as an application for a new license (*Matter of Wager* v. *State Liq. Auth.*, 4 N Y 2d 465), neither should be viewed without regard to what has gone on before. Forgiveness may be a virtue in some contexts, but its absence is not equivalent to arbitrary action.

Accordingly, the order annulling the Authority's determination should be reversed, on the law, the determination reinstated,

and the petition dismissed, with costs to respondent-appellant State Liquor Authority.

BOTEIN, P. J., BREITEL, McNALLY, STEVENS and BERGAN, JJ., concur.

Order, entered on February 26, 1963, unanimously reversed, on the law, the determination of respondent-appellant reinstated, and the petition dismissed, with $20 costs and disbursements to respondent-appellant.